IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JEFFREY GRAY**                                                                **PLAINTIFF**

**v.**                                       **CAUSE NO. 1:24cv150 HSO-BWR**

**CITY OF OCEAN SPRINGS, MISSISSIPPI,
SERGEANT DAVID WILDER, and OFFICER
CODY GILL, in their individual and official
capacities**                                            **DEFENDANTS**

---

### DEFENDANTS', CITY OF OCEAN SPRINGS, MISSISSIPPI'S, DAVID WILDER'S, AND CODY GILL'S, REBUTTAL IN SUPPORT OF MOTION TO DISMISS

---

While expressive activity is generally safeguarded, the City has a valid interest in limiting conduct that materially disrupts the essential operations of city hall. It is well within constitutional bounds to ensure that City Hall remains a functional and accessible space for the public.

Moreover, the body of First Amendment precedent is based on <u>clear expressive conduct</u> – which is not analogous or instructive as to Plaintiff's activities. Plaintiff offers <u>no</u> case law addressing expressive conduct that is purposefully deceptive[1] as to its true intentions. While the protesters in *Pouillon* and the post office cases tested the limits of <u>where</u> one can engage in First Amendment conduct, they never obscured the reason they were there in the first place, and they certainly were not attempting to entrap governments and law enforcement officers into infringing upon the Constitution. Here, as in all of Plaintiff's other "auditing" cases, the City and its officers were met with deception.

---

[1] In his Complaint, Plaintiff admits that in response to Sergeant Wilder's question of "What are you doing?", Plaintiff responds by saying "God Bless the Homeless Veterans" and "largely ignores Wilder and continues to repeat his charitable message". [Doc. 1 at ¶¶ 21-22].

Page **1** of **13**

Plaintiff's Brief in Opposition states that the reason this lawsuit came about is because Defendants thought Plaintiff was homeless and "believed they could treat him however they wanted because the homeless generally lack the resources to vindicate their rights". [Doc. 25 at Page 1]. This is, of course, false. Despite Plaintiff's assertion that he is "[m]otivated by a strongly held religious belief and a compassionate desire for the plight of homeless veterans", this lawsuit came about for the same reason as all of Plaintiff's other numerous suits. Plaintiff attempted to entrap the City into a perceived violation of his First Amendment rights, exploiting his self-styled auditing activities as a pretext for financial gain rather than legitimate constitutional advocacy.

On the contrary, Plaintiff was interfering with City Hall official business from the moment he arrived. The City's response was narrowly tailored and aimed solely to protect the accessibility, security, and functionality of this key governmental space. Defendants' conduct was a content-neutral measure grounded in practical considerations for maintaining uninterrupted public services, rather than a response to any identifiable expressive message. No, this lawsuit has not arisen because the City of Ocean Springs wanted to bully a homeless person. The City does, however, have a legitimate governmental interest in investigating a suspicious person interfering with official business at the entrance to City Hall.

I.  **Defendants' motion is not procedurally barred.**

F.R.C.P. Rule 12(h)(2)(C) states that a defense of failure to state a claim upon which relief can be granted may be raised as late as at trial. Federal courts routinely hold that when a Rule 12(b)(6) motion is filed after a responsive pleading has already been filed, the motion is to be treated as a motion for judgment on the pleadings under Rule 12(c). See *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (stating "Rule 12(c) motions, however, may be filed after the pleadings are closed. Such motions will be treated as a motion for judgment on the pleadings based

on a failure to state a claim on which relief may be granted. Thus, the district court did not err when it construed the defendants' motion as one for judgment on the pleadings. See *National Ass'n of Pharmaceutical Mfrs. v. Ayerst Laboratories*, 850 F.2d 904, 909 n. 4 (2d Cir.1988).") The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006).

Alternatively, should the motion be converted to one for summary judgment, F.R.C.P. Rule 56 states that "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." F.R.C.P. Rule 56(b).

Concerning the issue of qualified immunity, the Case Management Order entered in this case, and drafted by Plaintiff's counsel, specifically states:

> The parties agree, and this Court orders, Defendants may wait until after the discovery deadline to file dispositive motions on any immunity defenses, and that any such delay in filing said motions shall not be a waiver of any immunity defenses.

[Doc. 11]. The case management order explicitly indicates that Defendants have preserved their qualified immunity defense. Additionally, minimal written discovery has taken place thus far, and no depositions have been conducted, with proceedings still in the early stages. Defendants have raised the qualified immunity defense promptly.

## II.     Matters to be Considered under a Rule 12 Motion

"It is well known that when 'matters outside the pleading' are presented with a motion to dismiss under Rule 12(b)(6), a district court has complete discretion to either accept or exclude the evidence." *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).

However, courts resolving Rule 12(b)(6) (or Rule 12(c)) motions may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned without converting the motion into one for summary judgment under Rule 12(d). § 1357 Motions to Dismiss—Practice Under Rule 12(b)(6), 5B Fed. Prac. & Proc. Civ. § 1357 (4th ed.). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated "[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citation omitted). This approach is clearly intended to prevent plaintiffs from shielding certain items from judicial review by omitting them from the complaint itself, even though the claims rely on them.

In the present case, there is no question that Plaintiff has wholly relied on and incorporated videos (namely Ocean Springs police body cams as well as Plaintiff's own recordings) into the allegations of his Complaint. Plaintiff selectively extracts countless statements from these recordings throughout his Complaint, namely paragraphs 12-48. [Doc. 1]. In his Complaint, Plaintiff makes specific reference to audio and video files he is referencing in the formation of his Complaint. See [Doc. 1 at ¶ 30] ("as can be seen from the footage"); see [Doc. 1 at ¶ 31] ("audio is cut off"). These multimedia files relied on were incorporated into Plaintiff's various videos posted on his YouTube page related to this incident. See https://www.youtube.com/watch?v=IULyINZ6viU entitled "Pissed Off Cop Gets Confrontational."; see also https://www.youtube.com/watch?v=9Azb9JlavSQ entitled " 👢 Pissed Off Cop Boot Stomps The Constitution 👢 ; see also

https://www.youtube.com/watch?v=YbEFODTxmEg entitled "BodyCam-Cop Boot Stomps "Our So Called Constitutional Rights."; see also https://www.youtube.com/watch?v=7HPw-yDO3ro entitled "Rights Violating-Gypsy Cop?".

Defendants first assert that Plaintiff's claims itemized in his Complaint fail to state a claim on their face. Further, to the extent Plaintiff alleges Defendants have referenced matters outside the pleadings, Defendants assert those items have been incorporated by reference by Plaintiff in his Complaint and may be considered by the Court without conversion to summary judgment.

### III. Plaintiff's claims against the City of Ocean Springs, and Sergeant Wilder and Officer Gill in their official capacity, fail to state a claim under §1983 and *Monell*.

Plaintiff fails to plead sufficient facts to support claims under *Monell*. Instead, he argues that the City has a loitering ordinance. Indeed, so do most cities. At no point does Plaintiff show that the City has a policy or practice of utilizing its loitering ordinance to infringe upon the First Amendment.

The Fifth Circuit has recognized three ways a Plaintiff may establish the existence of a policy for the purpose of *Monell*: i) by showing a written policy; ii) by showing a widespread municipal practice; or, iii) in rare circumstances, by showing a single decision of an official policymaker if that policymaker also performed the act that forms the basis of the § 1983 claim. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019). This "single incident exception" is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010).

Furthermore, the Fifth Circuit has long distinguished between final decision-making authority and final policymaking authority. *Id.* A municipal policymaker is someone who has "the responsibility for making law or setting policy in any given area of a local government's business." *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988)). "Municipal liability attaches

only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered…" – which is a question of local and state law. *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484, n. 12 (1986)). Plaintiff argues that this case falls into the third category, which exists under "rare circumstances" and would ostensibly require that Sergeant Wilder and Officer Gill are "final policymakers" for the City. *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 395 (5th Cir. 2017).

Therefore, the "critical question" is generally "to decide who is the final policymaker, which is an issue of state law." *Webb* at 215. For example, Sheriffs in Mississippi are final policymakers with respect to all law enforcement decisions made with the county. *Huddleston v. Shirley*, 787 F. Supp. 109, 112 (N.D. Miss. 1992). The inquiry does not end where state law does not establish the relevant actor as the final policymaker, and municipal employees may possess final policymaking authority if the final policymaker has expressly or impliedly delegated such authority. *Webb* at 215. However, not all delegations of authority are delegations of policymaking authority, and the Fifth Circuit has "long recognized that the 'discretion to exercise a particular function does not necessarily entail final policymaking authority over that function.'" *Id.* (quoting *Bolton v. City of Dallas*, 541 F.3d 545, 549 (5th Cir. 2008)).

Lastly, if the plaintiff is able to show that the decision was promulgated by an authorized final policymaker, the plaintiff must show that this specific action was the moving force behind the constitutional violation. *Id.* at 219. This last step requires a showing that the decision itself was unconstitutional or that it was adopted with deliberate indifference to the known or obvious fact that such constitutional violations would occur. *Id.*

In *Valle*, the parents of a minor called the police when a minor suffering from mental health issues locked himself inside the family home and refused to let anyone in. 613 F.3d at 539. City of

Houston police officers and a crisis intervention team responded to the call and were unable to negotiate with the minor to gain access to the home, so they sought and received permission from their supervisor, Captain Williams of SWAT, to forcefully enter the house. *Id.* at 540. Upon entry, the minor charged the law enforcement officers with a hammer, and when non-lethal tactics failed, the officers ultimately discharged their firearms and killed the minor. *Id.* Subsequently, the parents sued the City pursuant to 42 U.S.C. § 1983. *Id.* Absent any official City policy authorizing constitutional violations, the parents argued that Captain Williams' decision to send the officers in amounted to a single decision by a final policymaker. *Id.* The Fifth Circuit found that although Captain Williams made the final decision in the situation, his decision did "not mean that he was setting City policy regarding the making of arrests". *Id.* at 543. Ultimately, the Court held that "[a]lthough Captain Williams's decision to order entry into the home was arguably the "moving force" behind the constitutional violations that resulted in [the minor's] death, because his decision was not a decision by a final policymaker of the City, the City cannot be liable." *Id.* at 544.

The case at hand does not amount to the "rare circumstances" needed to hold a municipality liable for a single decision of its final policymaker. Just as Captain Williams in *Valle* was not the City's final policymaker with regard to arrest protocols, Plaintiff cannot show that Sergeant Wilder or Officer Gill were final policymakers for the City on arrest or First Amendment matters. Here, at most, the officers had authority to make discretionary decisions regarding the City's loitering ordinance[2]. In no way were they delegated authority to make final policy decisions for the City. Even in *Valle*, where the stakes were far higher, the law enforcement officers' decisions were insufficient for municipal liability to attach because Captain Williams was not delegated policy making authority. Here, Sergeant Wilder and Officer Gill were simply employees who made a

---

[2] Plaintiff admits he was never charged with a criminal offense. [Doc. 1 at ¶ 49]

single, isolated decision that was justified under the circumstances. The "critical question" of whether they were final policymakers is easily answered in the negative. Therefore, Plaintiff fails to plead the "extremely narrow single incident exception" under *Monell*, and his claims against the City must be dismissed.

### IV.     **Plaintiff's ratification theory of liability also fails.**

Plaintiff also advances a ratification theory of municipal liability which is similarly limited to "extreme factual situations". *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009); *see also Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 171 (5th Cir. 1985). "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Peterson v. City of Fort Worth*, 588 F.3d 838, 854 (5th Cir. 2009). However, even when an authorized policymaker defends conduct that is later shown to be unlawful, this does not necessarily incur municipal liability. *Id.* at 848. Further, good faith statements made while defending complaints of constitutional violations by municipal employees <u>do not demonstrate ratification</u>. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) (emphasis added).

In *Zarnow*, police officers searched a physician's house for explosives and illegal weapons. *Id.* at 165. The physician plaintiff later sued the City and police chief, among others, for a litany of constitutional violations including misuse of the plain view doctrine. *Id.* The plaintiff argued that by defending the constitutionality and propriety of the officers' actions, the City ratified the unlawful conduct. *Id.* at 169. The court rejected this argument and held that although the officers' actions were unconstitutional, the police chief and city's good faith defense of the actions did not constitute a ratification and there was no municipal liability. *Id.*

In *Davidson*, the plaintiff argued that the police chief ratified his officers' conduct when he reviewed the arrest and determined that there was no violation for which he could discipline them. *Id.* at 395. The court found that the police officers' conduct during the arrest was unconstitutional, but not extreme enough to qualify for a finding of ratification. *Id.* at 396. Hence, the court held that no municipal liability attached. *Id.*

In line with *Zarnow*, the City of Ocean Springs' good faith efforts to defend this case in no way constitutes a ratification. More specifically, in *Zarnow*, the court held the city did not ratify the officers' abuse of the plain view doctrine by defending their conduct – even though said conduct was unconstitutional.

**V.** **Plaintiff cannot provide any factual basis to support that he was targeted on the content of his speech.**

Plaintiff has provided no factual basis that he was targeted due to the content of his alleged expressive activity. Sergeant Wilder was called to the scene on reports of a suspicious person. In his Complaint, Plaintiff admits that Wilder talked to the individuals at city hall who told him that "Gray has been approaching people when they get out of their vehicles…". [Doc. 1 at ¶ 30]. Plaintiff's allegation that Wilder acted "apparently based on whether that government employee agrees with the citizen's speech and/or conduct" is merely a speculative, conclusory statement that fails to meet the pleading standard necessary to avoid dismissal under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Despite these mere conclusory assertions, the video files relied on by Plaintiff leave no doubt that Gray was not targeted on the basis of his alleged speech. During the incident, Officer Wilder tells Plaintiff that "I'm a vet myself. I understand what you're doing, that's fine." See https://www.youtube.com/watch?v=YbEFODTxmEg beginning at timestamp 10:03. He continues "now, if you walked off the property and went somewhere else, not on private property, and did

this, then it wouldn't be a problem." *Id*. at timestamp 10:18. Conversely to the Plaintiff's conclusory statements, Sergeant Wilder expresses his sympathy with Plaintiff's message given Wilder is a veteran himself. He further makes clear that Plaintiff is free to continue his activity if he moves from the entrance of City Hall. It is evident that Sergeant Wilder was not concerned with the content of Plaintiff's speech, but rather the location Plaintiff was speaking from.

### VI.     City Hall is not a traditional public forum as a matter of law.

Plaintiff alleges that "City Hall is, as a matter of settled law, a traditional public forum". Doc. [25 at ¶ 17]. This is wrong.

Traditional public forums are spaces like streets and parks which have historically been open to public expression and assembly. *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). In contrast, city hall more resembles a nonpublic forum, as it is a government building primarily designated for administrative functions and the conduct of official business.[3] The grounds surrounding government buildings, including areas such as lawns or landscaped property adjacent to city hall, are generally designated for specific government uses and not for indiscriminate public access or expressive activities.

The United States Supreme Court has made clear that government property does not become a public forum simply by virtue of being publicly owned. *Greer v. Spock*, 424 U.S. 828, 836 (1976) (further stating "the guarantees of the First Amendment have never meant 'that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please.'" (internal citation omitted). In nonpublic forums, the government may impose reasonable, viewpoint-neutral restrictions to preserve the intended use of the property. *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 800

---

[3] Notably, in his Complaint, Plaintiff admits that he was not located in a traditional public forum, but rather was "in the grass next to the main entrance". [Doc. 1 at ¶ 12].

(1985). In this case, the City's alleged regulation of expressive activity on the grassy areas adjacent to city hall serves the legitimate purpose of maintaining orderly and unobstructed government functions, without targeting any specific viewpoint. Thus, the grass next to city hall is a nonpublic forum, subject to reasonable regulation, and does not carry the same First Amendment protections as a traditional public forum.

Plaintiff's sole reliance on *Pouillon v. City of Owosso*, 206 F.3d 711 (6th Cir. 2000) is misguided. *Poullion* does not establish that all city halls are, as a matter of law, traditional public forums. Instead, the court in *Pouillon* found that specific areas surrounding a particular city hall could be considered a traditional public forum based on how that specific space was historically used for expressive activities. The Sixth Circuit concluded that certain parts of the Owosso city hall grounds—specifically, the front steps and the sidewalk area—functioned as traditional public forums because they were traditionally used for public expression and protest. However, the court did not broadly hold that all city halls, by default, are traditional public forums. Rather, the classification of an area as a public forum depends on how the government has historically and intentionally used the space for public discourse, which varies between properties. *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 802 (1985).

Of note, Mississippi statute emphasizes the need to protect the administration and business of government buildings. Miss. Code Ann. § 97-7-63 entitled "Obstructing access to public buildings" states:

> (1) It shall be unlawful for any person, singly or in concert with others, to engage in picketing or mass demonstrations in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from any public premises, state property, county or municipal courthouses, city halls, office buildings, jails, or other public buildings or property owned by the State of Mississippi, or any county or municipal government

> located therein, or with the transaction of public business or administration of justice therein or thereon conducted or so as to obstruct or unreasonably interfere with free use of public streets, sidewalks, or other public ways adjacent or contiguous thereto.
>
> (2) Any person guilty of violating this section shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than five hundred dollars ($500.00), or imprisoned in jail not more than six (6) months, or both such fine and imprisonment.
>
> (3) This section shall not be construed to affect any suit or prosecution pending on July 9, 1964 in any court.

The United States Supreme Court found that the statute is "a valid law dealing with conduct subject to regulation so as to vindicate important interests of society and * * * the fact that free speech is intermingled with such conduct does not bring with it constitutional protection." *Cameron v. Johnson*, 390 U.S. 611, 617 (1968).

Plaintiff has alleged no facts that extend beyond speculative assumption that the entrance to Ocean Springs City Hall has been traditionally used for public expression and protest. Even so, Defendants' alleged content-neutral restriction survives the strictest scrutiny. Plaintiff was not subjected to "retaliatory actions, including criminal prosecution for speaking out". *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Plaintiff was simply told to move because he was interfering with business activities at City Hall. As previously stated, Plaintiff's interactions with police officers in numerous municipalities are by his own design.

Defendants responded to a disturbance call regarding a suspicious person near city hall, discovered Plaintiff at the entrance, and were told on scene by city employees that Plaintiff was approaching individuals as they exited their vehicles. As part of the investigation—whether into potential loitering, disorderly conduct, obstruction of a public building, or any number of related concerns—Defendants attempted to clarify the situation by inquiring about Plaintiff's activities.

Plaintiff, however, purposefully ignored these questions, hindering efforts to resolve any concerns. Defendants even informed Plaintiff that he could continue his activity if he moved. Plaintiff was neither arrested, charged with any crime, nor physically engaged at any point during the interaction. Defendants conducted a valid Terry stop that warranted a brief investigative detention. Accordingly, Plaintiff's claims lack all merit and should be dismissed in their entirety.

WHEREFORE, the Court should dismiss the complaint with prejudice.

Respectfully submitted, this the 13th day of November, 2024.

                                       CITY OF OCEAN SPRINGS, MISSISSIPPI,
                                       DAVID WILDER, and CODY GILL
                                       *Defendants*

                                       /s/ *Robert W. Wilkinson*
BY:       _____
                                       ROBERT W. WILKINSON (MSB No. 7215)
                                       WILL R. NORMAN (MSB No. 105713)
                                       Wilkinson, Williams, Bosio & Sessoms, PLLC
                                       734 Delmas Avenue (39567)
                                       Post Office Box 1618
                                       Pascagoula, MS 39568-1618
                                       Tel: (228) 762-2272; Fax: (228) 762-3223
                                       rwilkinson@wwbslaw.com
                                       wnorman@wwbslaw.com